IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
07/24/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
109 RIVERBLUFF CIRCLE,
CHARLOTTESVILLE, VIRGINIA

Case No. 3:19-mj-00044

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Wolf, a Special Agent with the Federal Bureau of Investigation, being duly sworn,

depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have

been so employed since 2013.  I am currently assigned to the FBI Richmond, Virginia (VA), Field

Office, Charlottesville Resident Agency.  As part of my duties as an FBI SA, I have investigated

criminal violations relating to domestic and international terrorism, civil rights, violent gangs,

drugs, and crimes against children.  I have received training and gained experience in interviewing

and interrogation techniques, arrest procedures, search warrant applications, the execution of

searches and seizures, computer crimes, computer evidence identification, child pornography

identification, computer evidence seizure and processing, and various other criminal laws and

procedures.

2.      This affidavit is submitted in support of applications for a search warrant pursuant

to Rule 41 of the Rules of Criminal Procedure for the premises located at **109 Riverbluff Circle,**

**Charlottesville, VA 22902** (the "SUBJECT PREMISES"), for contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B) which items are more specifically described in Attachment B of this affidavit.

3.     The statements contained in this affidavit are based in part on: information provided by FBI Special Agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent with the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B) are presently located at the SUBJECT PREMISES.

## STATUTORY AUTHORITY

4.     As noted above, this investigation concerns alleged violations of the following:

a.   Title 18, United States Code, Sections § 2252A(a)(2)(A) and (b)(1) prohibits a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b. Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) prohibits a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

5. The following definitions apply to this Affidavit and Attachment B to this Affidavit:

a. "**Illicit sexual conduct**" means, in relevant part, a sexual act (as defined in section 2246), with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction (SMTJ) of the United States. Under 18 U.S.C. § 2243, an offense under Chapter 109A, it is a crime for a person to knowingly engage, or attempt to engage, in a sexual act, as defined in 18 U.S.C. § 2246(2) with someone who has attained the age of 12 but not 16, when the minor is at least four years younger than the offender (in the SMTJ). Under 18 U.S.C. § 2244(a)(3), another Chapter 109A offense, it is a crime to engage in "sexual contact," as defined in 18 U.S.C. 2246(3), with a minor, at least four years younger who is between 12 and 15 years of age in the SMTJ.

3

b.  "**Child Pornography**" includes the definition in Title 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

c.  "**Visual depictions**" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  *See* 18 U.S.C. § 2256(5).

d.  "**Minor**" means any person under the age of eighteen years.  *See* 18 U.S.C. § 2256(1).

e.  "**Sexually explicit conduct**" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.  *See* 18 U.S.C. § 2256(2).

f.  The terms "**records**," "**documents**," and "**materials**," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical,

4

electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, VHS tapes, mini-casssette tapes, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## CHARACTERISTICS OF COLLECTORS OF CHILD PORNOGRAPHY

6.      Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the collection of child pornography (hereafter "Collectors").

7.      Collectors may receive sexual stimulation and satisfaction from contact with children, or from having fantasies of children engaged in sexual activity or suggestive poses, or from literature describing such activity.

8.      Collectors may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Collectors typically use these materials for their own sexual arousal and gratification.  Collectors often have companion collections of child erotica.  Child erotica are materials or items that are sexually suggestive and arousing to pedophiles, but which are not in and of themselves obscene or pornographic.  Such items may include photographs of clothed children, drawings, sketches, fantasy writings, diaries, pedophilic literature and sexual aids.

5

9.     Collectors who also actively seek to engage in sexual activity with children may use these materials to lower the inhibitions of a child they are attempting to seduce, convince the child of the normalcy of such conduct, sexually arouse their selected child partner, or demonstrate how to perform the desired sexual acts.

10.    Collectors may possess and maintain their "hard copies" of child pornographic images and reference materials (e.g., mailing and address lists) in a private and secure location. With the growth of the Internet and computers, a large percentage of most collections today are in digital format. Typically these materials are kept at the Collector's residence for easy access and viewing. Collectors usually place high value on their materials because of the legal and social danger associated with acquiring them. As a result, it is not uncommon for Collectors to hoard and retain child pornography for long periods of time, even for years.

11.    Collectors prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

12.    Producers of child pornography are even more likely to keep images or videos that they have created. This is because while pornographic images of anonymous images could possibly be replaced with images of other anonymous children, such as when "culling" a collection to improve the overall quality, images and videos of sexual acts depicting both the individual and known children are irreplaceable. Based upon my knowledge, training, and experience, producers of child pornography rarely, if ever, delete child pornography from a private collection.

## BACKGROUND AND USE OF "DROPBOX"

13.    Dropbox Inc. is a file hosting and sharing service operated by Dropbox Inc., which

is headquartered in San Francisco, California and is an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). Dropbox.com offers to its users cloud storage, file synchronization, personal cloud, and client software. Online storage mediums, such as Dropbox, make it possible for user to have access to saved files without the requirement of storing said files on their own computer or other electronic storage devices. A Dropbox user can store digital files within a special folder on the user's computing device, and these files can be synchronized so the same folder with all the same digital content is accessible on each of the user's other computing devices which have the Dropbox application installed and synched with the user's account. Files placed in these folders may be accessed through the Dropbox website and through desktop and mobile device applications.

14.     Dropbox users can share access to their digital files with others by using the built in option to create URL hyperlinks to their Dropbox accounts (hereafter "links") and sending said links through email, chat functions on various online or cellular applications or social media accounts. Dropbox users can also allow others to upload and download digital files stored within specific shared folders in the user's account. Dropbox has desktop applications as well as mobile applications for Android, and iOS devices. Dropbox collects information like the user's name, email address, phone numbers, payment info, and physical address. Dropbox also collects IP addresses for the devices accessing the account, the type of browser, device used, as well as identifiers associated with the user's devices.

15.     In some cases, Dropbox account users will communicate directly with Dropbox about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Online storage providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records

7

of any actions taken by the provider or user as a result of the communications.

## <u>BACKGROUND AND USE OF THE "KIK MESSENGER"</u>

16.     Kik Messenger, also known as "Kik," is a popular free instant messenger application (app) for mobile devices (i.e. smart cell phones, tablets, iPods, etc.) from the Canadian company, Kik Interactive, which was founded in 2009.  Kik is available on several mobile device platforms including, iOS, Android, and Windows Phone operating systems.  The Kik application can be located through Google's "Play Store," and Apples "App Store."  The Kik application utilizes the internet connection through the mobile devices' data plan or through Wi-Fi, to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content transmitted by through the Kik application.  Kik allows its users to register an user account without providing a telephone number, and prevents users from being located on the service through any information other than their chosen unique Kik username.

17.     After locating the Kik application and downloading the application to the mobile device, the application requests permission to access the following data on the mobile device during the installation process: in-app purchases, identity, contacts, location, photos/media/files, camera, microphone, device ID & call information.  Once given permission by the user, the Kik application installs itself on the mobile device. After installing the Kik app on the mobile device and initializing the Kik application for the first time, the potential user is required to establish a Kik account and is prompted to select the "SIGN UP" option.  While establishing a Kik account, the potential user is prompted to provide information, including the user's "First Name," "Last Name," and "Birthday."  The potential user is prompted to create a "Kik Username," (which is the only information that is required to be unique,) and is prompted to provide an "Email address."

8

The information provided by the potential user is used to establish a Kik account; however, this user information is not verified and the information can be completely fictitious (except for the uniqueness of the Kik username). A "verification email" is sent by Kik to the user's provided email address and the user is prompted to verify the email address. Verification of the user's email address is not required and does not prevent the user from utilizing the application if not verified. The potential Kik user is prompted to provide a user profile picture, which can either be taken using the mobile device's camera feature or uploaded from the device photo gallery. However, the lack of a profile picture does not prevent the user from utilizing the application. The Kik username is created by the user and is the only information that is required to be unique.

18.     At the completion of the account registration, the user is allowed to start communicating with other Kik users. Searching for specific Kik users can only be performed using the Kik user's registered "username;" searches by phone number or email address cannot be performed. Entering the unique Kik username through the application's search field yields potential matches in which the user simply selects the Kik user to start communicating with that specific user.

19.     In today's world where mobile phones are the technology of choice for millions of people to communicate, chat applications like Kik Messenger are often used to communicate with others, and on occasions are used during the commission of crimes, like the online harassment and bullying of juveniles, and the sexual exploitation of minors. Mobile devices which utilize social media and communication applications, store, or "cache," certain data from the social media or communication applications directly on the mobile device and this data can be recovered by a forensic expert. The Kik Messenger application is no different.

20.     For both iOS and Android devices, most Kik artifacts relevant to criminal

investigations are stored within specific databases located in specific locations on the mobile devices. These databases store details concerning the Kik users' contacts, messages, and attachments sent and received through the Kik Messenger application. These databases contain such data as the usernames and display names for each contact, but are not limited to this type of information. The Kik username is a unique identifier for each and every Kik user and this type of data is valuable in criminal investigations. The Kik contact database can also contain profile picture links and timestamps, as well as group and block lists. This data can be recovered from the mobile device by trained computer experts.

21.     Messages, including any attached image files, are stored within a specific location on the mobile device, depending on the device used. As Kik stores all of its data in this specific location within the mobile device, in an unencrypted format, there is a good chance that the entire messaging history, if not a partial message history, can be recovered by trained computer experts and used during investigations.

22.     Users sometimes delete their conversation histories by clearing the Kik Messenger logs. However, since the Kik messaging databases are not wiped or erased immediately (depending on the operating system of the mobile device), these deleted records end up being stored in a specific location in a specific format on the mobile device. These deleted records may be kept for a period of time until the database reclaims the space to store new records. A forensic expert has the ability to recover such records which could prove useful in various investigations.

23.     Sometimes, a user will attempt to destroy evidence by deleting the database file completely. While there is nothing that can be done to recover this information form an iOS device (the operating system does not allow for the recovery of anything that has been deleted), carving Android and chip-off dumps may return an amazingly high amount of deleted evidence.

**PROBABLE CAUSE**

24. Following an undercover operation, an individual known to be utilizing Kik, SUBJECT 1, was identified. On March 1, 2018, SUBJECT 1 was located at his residence and agreed to speak with law enforcement. SUBJECT 1 admitted to utilizing Kik username "ncboyrocks." SUBJECT 1 admitted to placing advertisements on sexting forums looking for younger males in North Carolina and engaging in sexual activity with a minor under the age of 16. During the course of this conversation, SUBJECT 1 admitted to receiving Dropbox links containing child pornography from others and then distributing the links. He also admitted to possessing a list of links saved within the "notes" application on his mobile device. Based on the context of the conversation, law enforcement understood SUBJECT 1 to mean that he was receiving and distributing Dropbox links containing child pornography imagery to other users of the Dropbox platform and that said links were contained in the "notes" application.

25. A review of SUBJECT 1's Kik Messenger communications revealed that he and other Kik Messenger users discussed exchanging Dropbox "links" containing digital files depicting child pornography, one such Kik Messenger user was "darren.boy".

26. On September 24, 2017, SUBJECT 1 (i.e. "ncboyrocks") had the following conversation on Kik Messenger with Kik user "darren.boy", who stated, *inter alia*, that he resides in Charlottesville, Virginia :

| 1 | | Incoming | You started chatting with Darren |
|---|---|---|---|
| 2 | ncboyrocks 😺🎱🔪ncboyrocks 🔪🎱😺 | Outgoing | Hey! |
| 3 | ncboyrocks | Outgoing | I have links |

| | | | |
|---|---|---|---|
| | ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | | |
| 4 | ncboyrock s ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | Outgoin g | Of young and older! |
| 5 | ncboyrock s ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | Outgoin g | I can send all my links in exchange of yours. How many do you have? |
| 6 | darren.boy Darren Hall | Incomin g | Hey |
| 7 | darren.boy Darren Hall | Incomin g | Idk a lot |
| 8 | ncboyrock s ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | Outgoin g | Ok haha 23 here btw |
| 9 | ncboyrock s ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | Outgoin g | You? |
| 1 0 | darren.boy Darren Hall | Incomin g | 19 |
| 1 1 | ncboyrock s ☺️🛍🗝ncb oyrocks 🗝🛍☺️ | Outgoin g | Lets start by sending one link each then all of them, sounds good? |
| 1 2 | darren.boy Darren Hall | Incomin g | Yeah you first |
| 1 3 | darren.boy Darren Hall | Incomin g | Where in NC are you from? |

| 1 4 | ncboyrocks ☺️🔦🔦ncboyrocks 🔦🔦☺️ | Outgoing | https://www.dropbox.com/sh/6wkuecjwq62k7js/AAB7UuYbQM ocYwGMkZNL9wPya/ |
|---|---|---|---|
| 1 5 | ncboyrocks ☺️🔦🔦ncboyrocks 🔦🔦☺️ | Outgoing | Chapel hill |
| 1 6 | ncboyrocks ☺️🔦🔦ncboyrocks 🔦🔦☺️ | Outgoing | What about you? |
| 1 7 | darren.boy Darren Hall | Incoming | VA |
| 1 8 | darren.boy Darren Hall | Incoming | You have younger? |
| 1 9 | darren.boy Darren Hall | Incoming | And kinky ☺ |
| 2 0 | ncboyrocks ☺️🔦🔦ncboyrocks 🔦🔦☺️ | Outgoing | Nice where in VA? |
| 2 1 | ncboyrocks ☺️🔦🔦ncboyrocks 🔦🔦☺️ | Outgoing | I will just send all I got lol but can you send yours too |

| 2 2 | ncboyrock s 😺🔔🧹ncb oyrocks 🧹🔔😺 | Outgoin g | Links: https://www.dropbox.com/sh/gkc6ahwwsviqmyk/AABw_LYNW vyKGwtNgYvXoSmXa<br><br>https://www.dropbox.com/sh/uniyzwueiqmgrcu/AAAjD3IbFD2n l4hoHpTQV9GUa?dl=0<br><br>https://www.dropbox.com/sh/6wkuecjwq62k7js/AAB7UuYbQM ocYwGMkZNL9wPya/<br><br>https://www.dropbox.com/sh/u8j1t65u16wwu6k/AABPCq2Bz1N J2ZDFGB9eE956a/?dl=0<br><br>https://www.dropbox.com/sh/7ojzo1y7e89yhja/AAAtbMWIW29 ACZHqGsfRcaFKa?dl=0<br><br>https://www.dropbox.com/sh/9jb1e6llmmrgkjc/AABNsf- _mbhGtan9u5nUCpUPa?dl=0<br><br>https://www.dropbox.com/sh/eh2spk4ocddkjpn/AAD4SRQvPgZi bMGF1soPp-pBa?dl=0<br><br><br>Links set 2:<br><br>st https://www.dropbox.com/sh/r0k8u2r42j4124z/AADs9JrHpgMI WIodWlyb4klRa?dl=<br><br>Vladik https://yadi.sk/a/HUXIQK-fzqagN<br><br>Msc YT https://www.dropbox.com/sh/pbpv0k0qwk8scv4/AADcc2R72AI zi2MqaLhCYkira<br><br><br>Boys https://www.dropbox.com/sh/m0d1s8umch9ypje/AADklNN9SK DRWXpAb_XlV54Ga?dl=0 |
|---|---|---|---|

Hh
https://www.dropbox.com/sh/h5qs8mr7kqi4d9g/AADh2RClSx1j
mQM2DtQH5eTQa?dl=0

afhjk
https://www.dropbox.com/sh/tz1nk2g76npp8by/AABDSKQRUQ
inChNvpDKX6BN8a?dl=0


Links 3:

https://www.dropbox.com/sh/cw5g5wv77ah2hpz/AADBovFTc2c
NXL0oHCM1qQJwa?dl=0

Wow!!!
https://marketing.dropbox.com/sh/%3Atkey/%3Asecure_hash/%2
Apath?referrer=https%3A%2F%2Fkik.com%2F

Check it out:
https://www.dropbox.com/sh/7gwwpxwmh3batd6/AAAeMKBS7
BU2HeJuXttB3glma?dl=0


Links set 4:

https://www.dropbox.com/sh/v0w21ldwpj5660w/AABSsILxS4j
WrAJ_nIhR3IVKa?dl=0

https://www.dropbox.com/sh/5mhlw575d1y579o/AAA_kxaLgIxi
BxPwUBApgVOna?dl=0

https://www.dropbox.com/sh/0cruscn2d41hvq9/AABbVj1Kk4h3
JxbqmFww-L5ca?dl=0

https://www.dropbox.com/sh/tq2ld8f18v0e9ig/AABy49_mBNY5
CzkEpL1m_JJ6a?dl=0

https://www.dropbox.com/sh/7lr25w5mlbf6yzx/AACs-
odVY1dlUZMo9jkw1pEBa?dl=0

https://www.dropbox.com/sh/hck96sjqugiqrm5/AACxqIqTPUtJn
Cddw_OBlL6Sa?dl=0

https://www.dropbox.com/sh/nc6qv8wfxpqiy7g/AAAHfnqrEwU
Si38nXYMtQlD-a?dl=0



https://www.dropbox.com/sh/8cbovyw63zww0ih/AAATov0xJh1jsPUVHJWaviCBa?dl=0

https://www.dropbox.com/sh/d3tr6656vwbqjtn/AADA6W0RgbaqONPPaNKZwmdoa?dl=0

https://www.dropbox.com/sh/6zpjsswp9y36dig/AAC12XCjCf9_RFhqGWtITGkoa?dl=0

16

| 2 3 | darren.boy Darren Hall | Incoming | https://www.dropbox.com/sh/eb0xigrorfvw76h/AACs-JzAOmiRfaJ_0491FVBEa/?dl=0 |
|---|---|---|---|
| | | | https://www.dropbox.com/sh/7qeo1zo8nrflsi9/AACkcsyHuT8ZXq7awy-IwIwGa/?dl=0 |
| | | | Links 6, 1 https://www.dropbox.com/sh/biyapdwsz5x9v3x/AABPyVnjKQsAo4vnWXGcbVXqa?dl=0 |
| | | | 3 https://www.dropbox.com/sh/7795rh9nx9r8ccw/AABXjrDqQPqEebs9RL63iaZza?dl=0 |
| | | | 8 https://www.dropbox.com/sh/6wkuecjwq62k7js/AAB7UuYbQMocYwGMkZNL9wPya/ |
| | | | 13 https://www.dropbox.com/sh/f93rxadduqsxm6b/AAByz6onC9MXSbemvzSp6kVba?dl=0 |
| | | | 14 https://www.dropbox.com/sh/czcyuyodvx42cm7/AADD98AttLKgrWlDP3Tz7PsVa?dl=0 |
| | | | 16 https://www.dropbox.com/sh/yh2uoaht3m0qrdl/AAAc3FiH-n222JxjnD7kbYfMa?dl=0 |
| | | | https://www.dropbox.com/sh/nw7ccfdh6xzvqc2/AAC-5qCDhuWYYLI3V1bpJ9F5a/?dl=0 |
| | | | https://www.dropbox.com/sh/1999xp6fex0dj0a/AABSqVM14dRC_VTc0Vwrznfaa/?dl=0 |
| | | | https://www.dropbox.com/sc/v9a21stbm1eo30m/AACbfI2PfYcI6iXa4pR3mqhAa/ |
| | | | https://www.dropbox.com/s/be989uunclcsyt1/BWVIP108.mp4?dl=0 |
| | | | https://www.dropbox.com/sh/d00r0vnoycyrhy4/AAAvnL9VXgkwd9yLyLgje0SWa/New?dl=0 |

| | | | |
|---|---|---|---|
| | | | https://www.dropbox.com/sh/1ievonvaguh71lf/AADacoWYyVF9ujHSD4JcqEMta?dl=0<br><br>https://www.dropbox.com/sh/5rq1c8gs8o90g2l/AADWw8ZPYLRKjdz60e9vWBa9a# |
| 2 4 | ncboyrock s 😺💣🐈ncb oyrocks 🐈💣😺 | Outgoin g | Links 5:<br>https://www.dropbox.com/sh/fs9aip4aocug30f/AACfpyo2wB2ksPPtuUq1kUNDa?dl=0<br><br>https://www.dropbox.com/sh/hbbbommwn9si4x9/AAAQYe-1n3-Kns53Efvi6qOIa?dl=0<br><br>https://www.dropbox.com/sh/7v7uf6nwus4tesu/AADr3HolJxiiVHXsf2AT3OwGa?dl=0<br><br>https://www.dropbox.com/sh/44y1n07fxwyr17y/AABCvm9a8G7AyfHnFgVCAUNta?dl=0<br><br>https://www.dropbox.com/sh/xce9ev2sfcqsja0/AABHlRU4cNF304QcI3wvEImQa?dl=0 |
| 2 5 | ncboyrock s | Outgoin g | That's all I got! Enjoy! ;) :) |

| | | | |
|---|---|---|---|
| | ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | | |
| 2 6 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | And have you mess with young boys yet? ;) |
| 2 7 | darren.boy Darren Hall | Incomin g | I did when I was younger |
| 2 8 | darren.boy Darren Hall | Incomin g | Does that count |
| 2 9 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | Nice |
| 3 0 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | Haha |
| 3 1 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | How old was the guy? |
| 3 2 | darren.boy Darren Hall | Incomin g | We were both 5 |
| 3 3 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | Lol young young |
| 3 4 | ncboyrock s ☺ 🔒 🐱 ncb oyrocks 🐾 🔒 ☺ | Outgoin g | Cute |

| 3 5 | darren.boy Darren Hall | Incomin g | We'd take turns sitting on each other's faces |
|---|---|---|---|
| 3 6 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | Mm hot |
| 3 7 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | I also had fun when little |
| 3 8 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | From like 8-14 lol |
| 3 9 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | With a female cousin |
| 4 0 | darren.boy Darren Hall | Incomin g | Hot I tried to fuck my cousin but he didn't want to |
| 4 1 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | But also had like 2 male friends we touched each other. But i actually sucked cock at 19 lol |
| 4 2 | darren.boy Darren Hall | Incomin g | When I was 16 I hooked up with a 22yo |
| 4 3 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | A lot of your links don't open :P you need to erase those before you send all you got! |
| 4 4 | ncboyrock s 😺👤🐾ncb oyrocks 🐾👤😺 | Outgoin g | Nice!! |

| 4 5 | darren.boy Darren Hall | Incoming | Yeah sorry they were someone else's |
|-----|------------------------|----------|-----------------------------------|
| 4 6 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | I had something with a 14 yr old for my first time doing under age👻. |
| 4 7 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | It was really hot |
| 4 8 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | But he didn't really bottom he tried lol |
| 4 9 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | It was fun! It was my fantasy haha |
| 5 0 | darren.boy Darren Hall | Incoming | Sounds awesome |
| 5 1 | darren.boy Darren Hall | Incoming | I would but I'm scared I'll get caught |
| 5 2 | darren.boy Darren Hall | Incoming | Did you record it? |
| 5 3 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | No i don't record lol |
| 5 4 | ncboyrocks 😺 👤 🐾ncb oyrocks 🐾 👤 😺 | Outgoing | You won't get caught! |
| 5 5 | ncboyrocks | Outgoing | You just need to go all for it |

| | | | |
|---|---|---|---|
| | 🐱👤🔪ncb oyrocks 👤👤🐱 | | |
| 5 6 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | And go when he is home alone! |
| 5 7 | darren.boy Darren Hall | Incomin g | Can I see your cock pedo Sensei |
| 5 8 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | |
| 5 9 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | You now;) |
| 6 0 | darren.boy Darren Hall | Incomin g | |
| 6 1 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | Nice cock as well |
| 6 2 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | Yum |
| 6 3 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | Would love to suck it and swallow |
| 6 4 | ncboyrock s 🐱👤🔪ncb oyrocks 👤👤🐱 | Outgoin g | Any fetishes? |

| 6 5 | darren.boy Darren Hall | Incoming | I like young and boys who like it as well |
|---|---|---|---|
| 6 6 | darren.boy Darren Hall | Incoming | And I've always wanted to watch rape videos with someone |
| 6 7 | ncboyrock s 😺🕯️🔪ncb oyrocks 🔪🕯️😺 | Outgoing | Oh cool about the same! For me is not more about the penetration to be honest when it comes to young boys but more like i think is cute and want to spoil young naughty boys and cuddle and stuff. |
| 6 8 | ncboyrock s 😺🕯️🔪ncb oyrocks 🔪🕯️😺 | Outgoing | I also love to watch rape porn on occasion it turns me on |
| 6 9 | darren.boy Darren Hall | Incoming | Yeah I just like their butts 😌 |
| 7 0 | darren.boy Darren Hall | Incoming | You got any good vids? |
| 7 1 | ncboyrock s 😺🕯️🔪ncb oyrocks 🔪🕯️😺 | Outgoing | Yeah so tight and virgin mm |
| 7 2 | ncboyrock s 😺🕯️🔪ncb oyrocks 🔪🕯️😺 | Outgoing | Not really for rape porn |
| 7 3 | ncboyrock s 😺🕯️🔪ncb oyrocks 🔪🕯️😺 | Outgoing | :/ |
| 7 4 | darren.boy Darren Hall | Incoming | Me either |
| 7 5 | darren.boy Darren Hall | Incoming | I've seen some but I deleted it |

| 76 | darren.boy Darren Hall | Incoming | Are you ever worried about getting caught on here? |
|---|---|---|---|
| 77 | ncboyrocks 😺🔔🗝ncb oyrocks 🗝🔔😺 | Outgoing | Why on here?<br>Not really. I delete conversations or close account open again and all conversations gone |
| 78 | darren.boy Darren Hall | Incoming | Dudes send me fake messages like "this is the FBI" all the time but nothing has happened |
| 79 | ncboyrocks 😺🔔🗝ncb oyrocks 🗝🔔😺 | Outgoing | But of course the history stays in kik forever is my understanding. Who knows |
| 80 | ncboyrocks 😺🔔🗝ncb oyrocks 🗝🔔😺 | Outgoing | I never gotten that lol |
| 81 | darren.boy Darren Hall | Incoming | Yeah idk there's too many people on here to get caught |
| 82 | ncboyrocks 😺🔔🗝ncb oyrocks 🗝🔔😺 | Outgoing | Im not mean to anyone so i hopefully that works |
| 83 | ncboyrocks 😺🔔🗝ncb oyrocks 🗝🔔😺 | Outgoing | Lol |
| 84 | darren.boy Darren Hall | Incoming | Yeah that's good |
| 85 | darren.boy Darren Hall | Incoming | What's your fav video you've watched? |
| 86 | ncboyrocks 😺🔔🗝ncb | Outgoing | Don't worry too much dude, have fun and just be cautious and do things right! :) |

| | | | |
|---|---|---|---|
| | oyrocks 🐱🎒🐱 | | |
| 8 7 | darren.boy Darren Hall | Incomin g | Thanks daddy |
| 8 8 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | Mmm fav video of what exactly? Porn or vids people send on kik? |
| 8 9 | darren.boy Darren Hall | Incomin g | Either |
| 9 0 | darren.boy Darren Hall | Incomin g | Have any little boys sent you vids recently? I wanna see |
| 9 1 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | Ok mmm i love the creampie orgy |
| 9 2 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | Gay vids. |
| 9 3 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | How young do you like btw? |
| 9 4 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | And no usually i don't get much vids at all |
| 9 5 | darren.boy Darren Hall | Incomin g | I go as low as 5 but my ideal is probably 7 or 8 |
| 9 6 | ncboyrock s 🐱🎒🐱ncb oyrocks 🐱🎒🐱 | Outgoin g | Vids on here a guy fucking so hard someone else that it got blood in the cock and it looked hot it just turned me on he just kept doing it and looked like a real good penetration |

| 97 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | Ok about the same like you for young guys |
|---|---|---|---|
| 98 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | For vids on here the link was deleted :/ but it was a young boy probably 3 yrs old and a guy probably his dad would jerk in the boy mouth and the boy liked opening his mouth v |
| 99 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | For vids on here the link was deleted :/ but it was a young boy probably 3 yrs old and a guy probably his dad would jerk in the boy mouth and the boy liked opening his mouth very wide and you could see how much he enjoyed eating cum already |
| 100 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | I found that vid hot to be honest 🙈 |
| 101 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | I like incest. You? |
| 102 | darren.boy Darren Hall | Incoming | Sounds awesome |
| 103 | darren.boy Darren Hall | Incoming | I'm fine with it it doesn't really get me going tho |
| 104 | darren.boy Darren Hall | Incoming | Depends how hot they are |
| 105 | ncboyrocks 😺🔔🐾ncboyrocks 🐾🔔😺 | Outgoing | True |
| 106 | darren.boy Darren Hall | Incoming | I see videos of really really young bugs getting fucked in the butt and they're moaning and you can see the cock going through them |

| 107 | darren.boy Darren Hall | Incoming | I wouldn't wanna do that but I like boys who are that crazy 😼 |
|---|---|---|---|
| 108 | darren.boy Darren Hall | Incoming | *boys |
| 109 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | I agree i found it hot too to see naughty boys |
| 110 | darren.boy Darren Hall | Incoming | If you ever drive up to Virginia I can suck your dick while we watch those |
| 111 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | Ok ;) haha |
| 112 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | Where in VA are you btw? |
| 113 | darren.boy Darren Hall | Incoming | Cville |
| 114 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | Nice |
| 115 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | I actually have a friend in that area. Cool to know you live there as well! ;) |
| 116 | ncboyrocks 😼🍼🐾ncboyrocks 🐾🍼😼 | Outgoing | Have snapchat? ncboyrocks<br><br>If you ever want to exchange face pic there and no screenshots or get blocked! |

| 1 1 7 | ncboyrocks 😺👤🐾ncboyrocks 🐾👤😺 | Outgoing | I have to leave now so chat later! ;) |
|---|---|---|---|
| 1 1 8 | darren.boy Darren Hall | Incoming | Alright, I pretty much only use kik for this smut tho 😊 |
| 1 1 9 | darren.boy Darren Hall | Incoming | And I delete my account a lot but I'll usually get back to you |
| 1 2 0 | ncboyrocks 😺👤🐾ncboyrocks 🐾👤😺 | Outgoing | Ok 👋 |
| 1 2 1 | ncboyrocks 😺👤🐾ncboyrocks 🐾👤😺 | Outgoing | Have fun! |
| 1 2 2 | darren.boy Darren Hall | Incoming | 👤 |
| 1 2 3 | darren.boy Darren Hall | Incoming | Hey got any more links? |
| 1 2 4 | ncboyrocks 😺👤🐾ncboyrocks 🐾👤😺 | Outgoing | Unfortunately no |
| 1 2 5 | ncboyrocks 😺👤🐾ncboyrocks 🐾👤😺 | Outgoing | Most people have about the same vids |
| 1 2 6 | darren.boy Darren Hall | Incoming | Could you sent me the ones I sent you? I deleted mine |

| 1 2 7 | ncboyrock s 😺👜🐈ncb oyrocks 🐈👜😺 | Outgoin g | Links: https://www.dropbox.com/sh/gkc6ahwwsviqmyk/AABw_LYNW vyKGwtNgYvXoSmXa<br><br>https://www.dropbox.com/sh/uniyzwueiqmgrcu/AAAjD3IbFD2n l4hoHpTQV9GUa?dl=0<br><br>https://www.dropbox.com/sh/6wkuecjwq62k7js/AAB7UuYbQM ocYwGMkZNL9wPya/<br><br>https://www.dropbox.com/sh/u8j1t65u16wwu6k/AABPCq2Bz1N J2ZDFGB9eE956a/?dl=0<br><br>https://www.dropbox.com/sh/7ojzo1y7e89yhja/AAAtbMWIW29 ACZHqGsfRcaFKa?dl=0<br><br>https://www.dropbox.com/sh/9jb1e6llmmrgkjc/AABNsf-_mbhGtan9u5nUCpUPa?dl=0<br><br>https://www.dropbox.com/sh/eh2spk4ocddkjpn/AAD4SRQvPgZi bMGF1soPp-pBa?dl=0<br><br><br>Links set 2:<br><br>st https://www.dropbox.com/sh/r0k8u2r42j4124z/AADs9JrHpgMI WIodWlyb4klRa?dl=<br><br>Vladik https://yadi.sk/a/HUXIQK-fzqagN<br><br>Msc YT https://www.dropbox.com/sh/pbpv0k0qwk8scv4/AADcc2R72AI zi2MqaLhCYkira<br><br><br>Boys https://www.dropbox.com/sh/m0d1s8umch9ypje/AADklNN9SK DRWXpAb_XlV54Ga?dl=0 |

Hh
https://www.dropbox.com/sh/h5qs8mr7kqi4d9g/AADh2RClSx1j
mQM2DtQH5eTQa?dl=0

afhjk
https://www.dropbox.com/sh/tz1nk2g76npp8by/AABDSKQRUQ
inChNvpDKX6BN8a?dl=0


Links 3:

https://www.dropbox.com/sh/cw5g5wv77ah2hpz/AADBovFTc2c
NXL0oHCM1qQJwa?dl=0

Wow!!!
https://marketing.dropbox.com/sh/%3Atkey/%3Asecure_hash/%2
Apath?referrer=https%3A%2F%2Fkik.com%2F

Check it out:
https://www.dropbox.com/sh/7gwwpxwmh3batd6/AAAeMKBS7
BU2HeJuXttB3glma?dl=0


Links set 4:

https://www.dropbox.com/sh/v0w21ldwpj5660w/AABSsILxS4j
WrAJ_nIhR3IVKa?dl=0

https://www.dropbox.com/sh/5mhlw575d1y579o/AAA_kxaLgIxi
BxPwUBApgVOna?dl=0

https://www.dropbox.com/sh/0cruscn2d41hvq9/AABbVj1Kk4h3
JxbqmFww-L5ca?dl=0

https://www.dropbox.com/sh/tq2ld8f18v0e9ig/AABy49_mBNY5
CzkEpL1m_JJ6a?dl=0

https://www.dropbox.com/sh/7lr25w5mlbf6yzx/AACs-
odVY1dlUZMo9jkw1pEBa?dl=0

https://www.dropbox.com/sh/hck96sjqugiqrm5/AACxqIqTPUtJn
Cddw_OBlL6Sa?dl=0

https://www.dropbox.com/sh/nc6qv8wfxpqiy7g/AAAHfnqrEwU
Si38nXYMtQlD-a?dl=0

| | | | |
|---|---|---|---|
| | | | https://www.dropbox.com/sh/8cbovyw63zww0ih/AAATov0xJh1jsPUVHJWaviCBa?dl=0 https://www.dropbox.com/sh/d3tr6656vwbqjtn/AADA6W0RgbaqONPPaNKZwmdoa?dl=0 https://www.dropbox.com/sh/6zpjsswp9y36dig/AAC12XCjCf9_RFhqGWtITGkoa?dl=0 |
| 1 2 8 | ncboyrocks 😺🔔🐀ncboyrocks 🐀🔔😺 | Outgoing | Links 5: https://www.dropbox.com/sh/fs9aip4aocug30f/AACfpyo2wB2ksPPtuUq1kUNDa?dl=0 https://www.dropbox.com/sh/hbbbommwn9si4x9/AAAQYe-1n3-Kns53Efvi6qOIa?dl=0 https://www.dropbox.com/sh/7v7uf6nwus4tesu/AADr3HolJxiiVHXsf2AT3OwGa?dl=0 https://www.dropbox.com/sh/44y1n07fxwyr17y/AABCvm9a8G7AyfHnFgVCAUNta?dl=0 https://www.dropbox.com/sh/xce9ev2sfcqsja0/AABHlRU4cNF304QcI3wvEImQa?dl=0 |

| 1 2 9 | darren.boy Darren Hall | Incomin g | |
|---|---|---|---|
| 1 3 0 | ncboyrock s 😺🧴🐈ncb oyrocks 🐈🧴😺 | Outgoin g | Have fun! ;) |
| 1 3 1 | ncboyrock s 😺🧴🐈ncb oyrocks 🐈🧴😺 | Outgoin g | If you get anything new would be cool if you shared :) |

27.     A subpoena return from Kik showed that Kik user "darren.boy" had an unverified registration email address of darrenhall28@aol.com and accessed the account on September 28, 2017 from an IP address owned by Century Link of 184.0.211.249.

28.     The Century Link associated with that IP address had the billing name of David and Brooke Correll.  Further investigation revealed that ROY CHAPMAN CORRELL (hereafter "SUBJECT 2"), their son, was 19 years old at the time of the above Kik messages (the age "darren.boy" claimed to be in the above Kik messages).

29.     In March of 2019, your Affiant learned from an educational institution that SUBJECT 2 changed his residential address to the SUBJECT PREMISES as of November 20, 2017.

30.     Based on surveillance and public records it is believed that the SUBJECT PREMISES is the residence of SUBJECT 2's father; while 1285 Tilman Road, the subject of separate affidavit and search warrant, is the residence of SUBJECT 2's mother.

31.     Surveillance of the SUBJECT PREMISES in April of 2019 revealed that SUBJECT 2 was observed digging in the front yard of the SUBJECT PREMISES.  A separate surveillance of the SUBJECT PREMISES in May of 2019 revealed that a green Acura bearing Virginia license

plate VWL7192 was observed in the driveway and later the same day operated by SUBJECT 2.

32.     In April of 2019, your Affiant learned from Verizon that SUBJECT 2 utilized cellular phones identified with IMEIs 354839093242769, 359301063468135, and 359236061276611 (hereafter "SUBJECT DEVICES") from May 8, 2015 to the present time when processed in April of 2019.

33.     The Dropbox links sent and received by Kik user "darren.boy" in the exchange above with "ncboyrocks" were reviewed by your Affiant through search warrant returns from Dropbox.  The aforementioned links were observed to contain approximately 1,000 images, to include videos of child exploitative material (CEM).

34.     A review of the above images and videos revealed sexually suggestive poses and/or acts that involved toddlers and infants.

## COMPUTERS, CELLULAR DEVICES, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

35.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media, to include cellular devices.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

36.     *Probable cause.*  I submit that if a computer, cellular device, or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records will be stored on that computer, cellular device, or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

Case 3:19-mj-00044-JCH   Document 1-1   Filed 07/24/19   Page 34 of 50   Pageid#: 35

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

37.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the SUBJECT PREMISES because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer, cellular, and other
electronic storage media may provide crucial evidence of the "who, what, why,
when, where, and how" of the criminal conduct under investigation, thus enabling
the United States to establish and prove each element or alternatively, to exclude
the innocent from further suspicion.  In my training and experience, information
stored within a computer or storage media (e.g., registry information,
communications, images and movies, transactional information, records of
session times and durations, internet history, and anti-virus, spyware, and
malware detection programs) can indicate who has used or controlled the
computer, cellular, or storage media.  This "user attribution" evidence is
analogous to the search for "indicia of occupancy" while executing a search
warrant at a residence.  The existence or absence of anti-virus, spyware, and
malware detection programs may indicate whether the computer was remotely
accessed, thus inculpating or exculpating the computer owner.  Further, computer
and storage media activity can indicate how and when the computer or storage
media was accessed or used.  For example, as described herein, computers
typically contain information that log: computer user account session times and
durations, computer activity associated with user accounts, electronic storage
media that connected with the computer, and the IP addresses through which the
computer accessed networks and the internet.  Such information allows
investigators to understand the chronological context of computer or electronic
storage media access, use, and events relating to the crime under investigation.
Additionally, some information stored within a computer or electronic storage

media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can

37

be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer to distribute or download CEM, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

38.  *Necessity of seizing or copying entire computers, cellular, or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage

media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.

However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

39. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

40. Because several people share the SUBJECT PREMISES as a residence, it is possible that the SUBJECT PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers, cellular, or storage media, the warrant applied for would permit the seizure and review of those items as well.

## AUTHORIZATION FOR FINGERPRINT UNLOCK OF APPLE IPHONE

41. In my training and experience, it is likely that the SUBJECT PREMISES will contain at least one Apple brand device, such as an iPhone or iPad, because SUBJECT DEVICES, as well as other phones utilized by other members of the family, have been identified

by Verizon and your Affiant as iPhones at the SUBJECT PREMISES. I know from my training and experience, as well as from information found in publicly available materials including those published by Apple, that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

42. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

43. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or

restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

44.     The passcode or password that would unlock the SUBJECT DEVICES is not known to law enforcement.  Thus, it will likely be necessary to press the finger(s) of the user(s) of the SUBJECT DEVICES found during the search of the SUBJECT PREMISES to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant.  Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant.

45.     In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device.  However, in my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all.  Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device.  Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the SUBJECT PREMISES to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Subject Premises in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.    Based on these facts and my training and experience, it is likely that BROOKE CORRELL and/or DAVID CORRELL are

users of the SUBJECT DEVICES and thus that their fingerprints are among those that are able to unlock the device via Touch ID.

46.     Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers.  In the event that law enforcement is unable to unlock the SUBJECT DEVICES found in the SUBJECT PREMISES as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

47.     Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the SUBJECT PREMISES to the Touch ID sensor of the SUBJECT DEVICES, such as an iPhone or iPad, found at the SUBJECT PREMISES for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## CONCLUSION

48.     I am investigating SUBJECT 2 for distribution, receipt, and possession of child pornography and I have probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B) are located within the SUBJECT PREMISES.  Your Affiant also seeks to obtain those items described in Attachment B for the purpose of obtaining potential evidence and contraband of CEM that is stored or located on SUBJECT PREMISES.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/David Wolf*
David Wolf, Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on this

__24th__ day of July, 2019.

HONORABLE JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

44

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the SUBJECT PREMISES located at **109 Riverbluff Circle, Charlottesville, VA 22901**, situated within the Western District of Virginia. The residence is located in a cul-de-sac neighborhood with houses on both the left and right sides of the street. The SUBJECT PREMISES is described as a two-story single-family home, with yellow siding. The residence has a single car driveway,. The numbers "109" are posted to the left of the front entrance of the residence. Photographs and area map of the premises are incorporated herein.

### SUBJECT PREMISES:



**Satellite map of 109 Riverbluff Circle:**



**ATTACHMENT B**

**(109 Riverbluff Circle, Charlottesville, VA 22902, HEREAFTER "SUBJECT**

**PREMISES")**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

I.    This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

    a.  Evidence of violations of 18 U.S.C. §§ 2252 and 2252A (sexual exploitation of minors and material constituting child pornography – the subject violations); or

    b.  Any item constituting contraband due to the subject violations, fruits of the subject violations, or other items possessed whose possession is illegal due to the subject violations; or

    c.  Any property designed for use, intended for use, or used in committing any subject violations.

    d.  Any item showing proof of occupancy within the SUBJECT PREMISES, ownership or use of contraband, or ownership or use of property used to commit any subject violations.

II.    Computer, cellular, or storage media used as a means to commit the violations described above.

III.    For any computer, cellular, or storage medium whose seizure is otherwise authorized by this warrant, and any computer, cellular, or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

2.  Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IV. Any and all notes, documents, receipts, records, or correspondence pertaining to child pornography, as defined under 18 U.S.C. § 2256(8).

V. Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer for the purpose of distributing or receiving child pornography.

VI. Any and all correspondence identifying persons transmitting, through interstate commerce including by United States Mail or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

VII. Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Provider.

VIII. Any and all cameras, film or other photographic equipment.

IX. Any and all visual depictions of minors.

X. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mail or by computer, and visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

XI. Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C § 2256(2).

XII. Any and all documents, records, or correspondence pertaining to occupancy at **109 Riverbluff Circle, Charlottesville, VA 22902**.

XIII. Any and all documents, pictures, records, or correspondence pertaining to ownership or use of a particular computer or cellular device.

XIV. Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

XV. Any of the items described in paragraphs 1 through 13 above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form.

XVI. During the execution of the search of the SUBJECT PREMISES described in Attachment A, law enforcement personnel are authorized to press the fingers (including thumbs) of individuals found at the SUBJECT PREMISES to the Touch ID sensor of any phone with IMEI 354839093242769, and/or 359301063468135, and/or 35923606127661 for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.